IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JYRAN MITCHELL | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 20 C 990 |
| VILLAGE OF MATTESON, et al. | ) ) | Judge Manish Shah |
| Defendants. | ) ) | |

## PLAINTIFF'S OPPOSITION BRIEF TO DEFENDANTS' MOTION TO DISMISS

### I. INTRODUCTION

African-American Plaintiff Jyran Mitchell was an innocent college-bound high school honors student who was lawfully inside his home until he was violently attacked by Defendants Dumais and Reyes. Jyran missed playing collegiate football, on scholarship, his freshman year because his right knee was kicked out during their attack; facts Defendants consciously ignore.

Relying on their version of the incident, Defendants argue the Complaint must be dismissed because Jyran "fails to state a claim." The facts alleged in the Complaint make is incontrovertible that Jyran has cognizable claims against Defendants Dumais and Reyes for which they are not entitled to any form of immunity from suit. Defendants' reliance on a self-serving narrative and their invitation to this Court to weigh evidence and make factual findings based on Defendants' narrative is improper under Rule 12(b)(6).

### II. LEGAL STANDARD

Rule 12(b)(6) only tests the legal sufficiency of the complaint and is not an opportunity to undertake fact-finding or weigh evidence, *One Wisconsin Inst., Inc. v. Nichol*, 155 F. Supp.3d 898, 901 (W.D. Wis. 2015), and the Court considers only the facts alleged in the complaint. *Tobey v.*

1

*Chibucos*, 890 F.3d 634, 647 (7th Cir. 2018). The Court must accept as true all facts alleged in the complaint and construe all reasonable inferences in favor of the non-moving party (here, Plaintiff). *Hayes v. City of Chi.*, 670 F.3d 810, 813 (7th Cir. 2012). A "complaint is not required to allege all, or any, of the facts logically entailed by the claim." *Bennett v. Schmidt,* 153 F.2d 516, 518 (7th Cir. 1998). As the Seventh Circuit reiterated in *Kolupa v. Roselle Park Dist.*, 438 F.3d 713, 714-15 (7th Cir. 2006):

> Any district judge (for that matter, any defendant) tempted to write "this complaint is deficient because it does not contain" . . . should stop and think: "What rule of law requires a complaint to contain that allegation?" . . . [W]e reiterate that complaints need not plead facts and need not narrate events that correspond to each aspect of the applicable legal rule. Any decision declaring "this complaint is deficient because it does not allege X" is a candidate for summary reversal, unless X is on the list in Fed. R. Civ. P. 9(b).[1]

The focus is whether the Complaint's factual allegations give the defendants "fair notice" of the claims for relief and whether those claims are plausible. *Bausch v. Stryker Corp.*, 630 F.3d 546, 559-62 (7th Cir. 2010) (reversing dismissal); *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083-84 (7th Cir. 2008) ("the Court in [*Iqbal/Twombly*] made it clear that. . . notice-pleading is still all that is required.").[2] A complaint that invokes a recognized legal theory and contains plausible allegations on the material issues cannot be dismissed. *Jacobs v. City of Chi.*, 215 F.3d 758 (7th Cir. 2000) (reversing dismissal of false arrest and excessive force claims); *Green v. Chvala*, 567 Fed. Appx. 458, 461 (7th Cir. 2014) ("[Plaintiff contends] . . . his excessive force claim . . . for kneeing him in the ribs should go forward . . . here too [Plaintiff] states a claim.").

### III. FACTS ALLEGED IN THE SECOND AMENDED COMPLAINT

On February 2, 2018, Defendant Dumais was driving on the I-294 highway when he initiated a traffic stop of a black 2013 Jaguar. (Ex. 1, ¶16) The Jaguar's windows were tinted; he

---

[1] None of Jyran's claims are listed in Fed. R. Civ. P. 9(b).
[2] *Bennett* and *Kolupa* remain good law after *Iqbal/Twombly*. *See Tamayo*, 526 F.3d at 1082, n.2.

2

could not see who was inside or driving. (*Id*. at ¶¶16-17) The Jaguar drove off after Dumais exited his vehicle and approached. (*Id*. ¶18-19) Irritated and angry, Dumais ran the Jaguar's plates through the Secretary of State database, learning the Jaguar was registered to <u>Shawn</u> Mitchell at 612 Goldenrod Circle, in Matteson. (*Id*. ¶¶20-21) Using the database, Dumais saw a picture of Shawn and knew he owned the Jaguar. (*Id*. ¶22) Dumais radioed for assistance; Dumais, Reyes and Bates all went to the residence. (*Id*. ¶¶23-28)

Jyran was a high school senior with a 4.0 G.P.A. and a varsity athlete. (*Id*. ¶6) He was at home with his grandmother, Carolyn, when Defendants arrived at the residence. (*Id*. ¶¶36-40) Defendants observed there was only one vehicle parked in the driveway - a 2017 Chevy Malibu - which, unlike the Jaguar that they were seeking, had a different license plate number and different registered owner (Jyran, <u>not</u> Shawn). (*Id*. ¶32-35)

Defendants were impatient, and despite not observing the Jaguar on the premises, went to the front door. (*Id*. ¶35) Carolyn answered the door, identifying herself as Shawn's grandmother and told them Shawn was not home. (*Id*. ¶¶39-40) Jyran joined his grandmother at the front door, standing inside the residence, and told Defendants he was Jyran (<u>not</u> Shawn), that Shawn was not at home, and that Jyran had not driven a Jaguar that night. (*Id*. ¶¶41-42) Defendants knew what Shawn looked like and knew, in fact, that Jyran was not Shawn. (*Id*. ¶43) Knowing there were no exigent circumstances requiring the use of force, Defendants lured Jyran out of his house by repeatedly asking Jyran if "that was his car," pointing to the Chevy Malibu parked in the driveway. (*Id*. ¶43-50) Jyran had to step outside the doorway to see what the Defendants were referring to and honestly answer their question. (*Id*.)

When Jyran stepped outside, Defendants immediately and violently grabbed Jyran. (*Id*.) Dumais and Reyes grabbed Jyrans left and right arms, respectively, performing what is known as

3

an "emergency takedown," despite the fact that Jyran offered no resistance and had cooperatively stepped outside to answer Defendants' question. (*Id.* ¶¶50-53) While they tried to throw Jyran to the ground, Bates ran up and kicked Jyran's knee causing it to buckle. (*Id.*) Although Jyran continued to offer no resistance, Defendants violently threw him into rocks on the ground. (*Id.*) After throwing Jyran to the ground and handcuffing him, the Defendants yanked him up and forced him into a nearby squad car. (*Id.* ¶63-65) Meanwhile, Jyran begged them to look at the Malibu parked in the driveway (which obviously was not a Jaguar), and to check his license, which would show his name (which they already knew). (*Id.* ¶43) Once in the squad car, Dumais checked the registration for the Chevy Malibu, confirmed it was registered to Jyran, and then yanked Jyran out of the car, releasing him. (*Id.* ¶63-65) Defendants grabbed and kicked Jyran because he was African-American. Dumais was enraged because he felt slighted by what he perceived to be an insolent black teenager disobeying his authority at a traffic stop. (*Id.* ¶¶ 59- 61) Due to Defendants' violent conduct, Jyran suffered a torn meniscus in his knee, requiring surgery and extensive rehabilitation. (*Id.* ¶¶70-71)

### IV. ARGUMENT

**A. The Complaint Undeniably Establishes Defendants Subjected Jyran to Excessive Force for which Qualified Immunity Is Unavailable.**

**1. Defendants Used Objectively Unreasonable Force.**

Defendants' motion should be denied because they have "fair notice" of the basis for Jyran's claims and all of those claims are plausible based <u>on the facts alleged in his Complaint</u>. Impermissibly citing <u>their</u> version of the incident, the bulk of Defendants' motion is devoted to arguing that Defendants' use of force was reasonable because "[l]aw enforcement is a difficult job" and police officers should not be second-guessed because "not every push or shove" is actionable. (Br. at 5-6) By cherry-picking facts and engaging in blame-shifting, Defendants

4

contend these facts do "not state a claim" because, according to their version, they "had a reasonable belief that they were arresting a suspect who committed a crime" (Br. at 8) and "the only factual allegation that appears to approach the realm of excessive force is the allegation that Officer Bates kicked the Plaintiff's knee." (*Id.* at 6-7)

Defendants' arguments go to what Plaintiff ultimately seeks to prove, which is addressed at trial, but which is never a basis to dismiss under Rule 12(b)(6). *Kolupa*, 438 at 715. ("these details may be explored in discovery … but need not be included in complaints."). Unsurprisingly, Defendants rely on cases addressing summary judgment. (Br. at 8-10)[3] The pleading standard is "different from the evidentiary standard that a plaintiff must subsequently meet." *Huri v. Office of the Chief Judge of the Circuit Court of Cook Cnty.*, 804 F.3d 826, 834 (7th Cir. 2015).

Defendants' briefing repeatedly characterizes their hateful race-based attack of Jyran as a routine investigation where Defendants simply "questioned Plaintiff and his grandmother" and performed an "emergency takedown." (Br. at 5-6) But the actual facts alleged in the Complaint and summarized above demonstrate Defendants did considerably more than simply "push or shove" Jyran during what was hardly a routine situation. To the contrary, the facts alleged show Defendants: (1) knew they were looking for a black 2013 Jaguar, but found only a 2017 Chevy Malibu (Ex. 1, Compl. ¶¶30-31); (2) were looking for Shawn Mitchell (and knew what Shawn actually looked like per the Secretary of State photo), but found only Jyran (who they knew, in fact, was Jyran) (*Id.* ¶¶20-23, 43); (3) were not investigating a violent crime; (*Id.* ¶¶18-19); (4) knew that Jyran posed no threat and was not attempting to evade, as is evident from how he calmly

---

[3] Defendants reliance on *Boyd v. Angarone*, 729 F. Supp. 1194 (N.D. Ill. 1990), *Cole v. Village of Riverdale*, 14 C 19, 2016 WL 4505163 (N.D. Ill. Aug. 29, 2016) and *Chavez v. Illinois State Police*, 251 F.3d 612 (7th Cir. 2001) is misplaced as each of these cases involved summary judgment motions. At the pleading stage, the Court must accept as Jyran's facts, not Defendants' version.

5

stood in his doorway and truthfully answered Defendants' inquiry (*Id.* ¶¶36-49); (5) were impatient and harbored animosity from what they perceived to be the temerity of a different black kid who committed "contempt of cop" by fleeing a traffic stop (*Id.* ¶¶4, 20, 35, 54, 58); and (6) did not encounter exigent circumstances when they arrived at the residence, but rather *created* their own exigency by needlessly escalating the situation by luring Jyran out of his home and then, without provocation, attacking him by violently instigating a struggle and throwing him face-down on the ground just before his knee is kicked out. (*Id.* ¶¶35-63) Why did they do it? The answer supplied by the reasonable inferences from the facts alleged in the Complaint is simple: because any black kid would do. The fact that Jyran was Shawn's brother was just a bonus.[4] Even after they violently grabbed and threw Jyran face-down on to the ground, he remained passive, offered no resistance to *any* of the Defendants but was nonetheless forcefully placed inside a squad car by the Defendants – *not* just Defendant Bates (*Id.* ¶¶35-63)

These alleged facts and their reasonable inferences must be presumed to be true for purposes of this motion and Defendants' contrary narrative must be ignored. *Reed v. Palmer*, 906 F.3d 540, 548 (7th Cir. 2018) ("it is the defendant's conduct *as alleged in the complaint* that is scrutinized for objective reasonableness" – reversing Rule 12(b)(6) dismissal) (emphasis in original). Astonishingly, Defendants justify their conduct as "reasonable" because fleeing a traffic stop is "a Class A misdemeanor." (Br. at 4, n.1) To argue it is "reasonable" to violently throw an innocent black kid to the ground (fully aware that he is not the person they are seeking) and kick out his knee - unprovoked and while harboring racial animus - because they are investigating a misdemeanor is as legally incorrect as it is shocking.

As Defendants concede, under *Graham*, reasonableness of the force used is measured by

---

[4] Surely Defendants vehemently deny this and want to present what they believe is contrary evidence. The rules allow for them to do so at trial.

6

considering, among other things, the nature of the crime involved. *Graham v. Connor*, 490 U.S. 386, 396 (1989). Fleeing a traffic stop was a non-violent misdemeanor which the Defendants knew had not been committed by Jyran. The Complaint does not allege that they innocently mistook Jyran for Shawn; that is Defendants' version. Jyran has clearly pled facts plausibly suggesting he was the victim of racially-motivated police brutality at the hands of the Defendants, sufficient to survive dismissal and preclude a finding of qualified immunity under Rule 12(b)(6).

Jyran has undeniably alleged sufficient facts to put Defendants on notice of all the claims for which he is suing the Defendants. *See Rambo v. Daley*, 68 F.3d 203, 207 (7th Cir. 1995) ("under Plaintiff's version of the facts [Defendants'] actions could [not] be considered objectively reasonable … [t]he Constitution clearly does not allow police officers to force a passive handcuffed suspect into a squad car by breaking his ribs"). Indeed, the very act of performing a violent take-down of Jyran, <u>alone</u>, was excessive because, as alleged in the Complaint, Jyran was not resisting or evading and presented as a cooperative citizen who truthfully answered all of the Defendants' questions when they arrived unannounced on his doorstep.

Examples of resistance that justify *some* use of force <u>not</u> present as alleged in the Complaint include kicking and flailing arms, declining to follow instructions while acting in a belligerent manner or swatting an officer's hands away while backpedaling. *See e.g. Clarett v. Roberts*, 657 F.3d 664, 674-75 (7th Cir. 2011); *Forrest v. Prine*, 620 F.3d 739, 745-46 (7th Cir. 2010); *Brooks v. City of Aurora*, 653 F.3d 478, 481 (7th Cir. 2011). The Complaint alleges that Jyran did the exact opposite: he came to the door, he honestly answered Defendants' questions, cooperated by stepping outside to look at the car, and for his effort and cooperation Defendants suddenly and viciously threw Jyran face-down on to the ground even though Dumais knew, in fact, that Jyran was not the suspect having seen Shawn's picture before approaching the residence. (Compl. ¶¶22,

7

43) Defendants' attempt to weave a contrary narrative is to be ignored at the pleading stage. *Rambo*, 68 F.3d at 207; *Jacobs*, 215 F.3d at 773-74 ("[Plaintiff] was siting at home alone in his apartment behind a locked door . . . unarmed, and had done nothing either to attempt to evade the officers or interfere with the execution of their duties.")

Also, as a legal proposition, Defendants' attempt at blame-shifting, arguing it was Defendant Bates who kicked out Jyran's knee (Br. at 8) is irrelevant. Under *Graham*, an officer's use of force is assessed for reasonableness under the totality of the circumstances, which can "take into account unreasonable police conduct prior to the use of force that foreseeably created the need to use it." *County of Los Angeles v. Mendez*, 137 S. Ct. 1539, 1543-1547 (2017); *Estate of Holstein v. City of Zion*, Case No. 17 C 112, 2019 U.S. Dist. LEXIS 64736, *19 (N.D. Ill. Apr. 16, 2019) (Chang. J.) ("*Mendez* also leaves open the possibility that an initial Fourth Amendment violation could be considered as part of the totality of the circumstances that might render an officer's use of force excessive."); *Fields v. City of Pittsburgh*, 714 Fed. Appx. 137, 142 (3rd Cir. 2017)(same).

Here, Dumais and Reyes created their own exigency by luring Jyran out of his home and immediately pouncing on him without provocation due to Dumais' still simmering anger at Shawn from the earlier traffic stop. The Complaint does not allege that Defendants mistakenly believed Jyran was Shawn, but rather describes a scenario that they were angry and knowingly grabbed Shawn's brother (aware that he was not Shawn) and attacked him. (Compl. ¶¶43-61) Defendants also knowingly created the false perception that Jyran was a resistant suspect by violently yanking his body back-and-forth like a ragdoll. Because Defendants created a false perception that Jyran was a suspect who was resisting arrest, it was easily foreseeable that Bates would come to their "aid" and intentionally injure Jyran after being "primed to pummel" by Defendants. As this Court noted in *Rattary v. Caudill*, Case No. 14 C 8735, 2016 U.S. Dist. LEXIS 189703 *7 (N.D. Ill. Oct.

8

6, 2016) (Shah, J.), conflicting accounts about what happened cannot be resolved at summary judgment, much less, on a motion to dismiss. *Id.*, at *7 ("according to Plaintiff, the officers attacked him … but according to [Defendants] … [Plaintiff attacked Defendants] … [t]he reasonableness of [Defendant's] use of force varies significantly depending on either version … meaning that disputed facts preclude summary judgment"). Jyran's Complaint pleads sufficient facts that plausibly establish an excessive force claim.

### 2. Defendants Violated Clearly Established Law Foreclosing Qualified Immunity.

Defendants alternatively seek dismissal on the basis of qualified immunity. Again, "it is defendant's conduct as alleged in the complaint that is scrutinized for objective reasonableness." *Reed*, 906 F.3d at 548. For that reason, "Rule 12(b)(6) is a mismatch for immunity and almost always a bad ground for dismissal." *Jacobs*, 215 F.3d at 775. Qualified immunity involves two questions: (1) whether the facts make out a violation of a constitutional right; and (2) whether the constitutional right was clearly established at the time of the alleged violation. *Williams v. City of Chicago*, 733 F.3d 749 (7th Cir. 2013) (reversing dismissal granted on qualified immunity which accepted defendants' version of facts).

As late as February 2, 2018, clearly established law undeniably provided that police officers were forbidden from using objectively unreasonable force per *Graham v. Connor*, 490 U.S. 386, 396 (1989) and reemphasized in *Abdullahi v. City of* Madison, 423 F.3d 763, 765 (7th Cir. 2005), *Caitlin v. City of Wheaton*, 574 F.3d 361, 367 (7th Cir. 2009), and *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 862 (7th Cir. 2010). Defendants' opinion they did not violate that clearly established precedent, again, runs afoul of the pleading standard. Defendants do not get to substitute Jyran's allegations for their narrative to secure a dismissal. The *Reed/Jacobs* line of cases make it abundantly clear that is grounds for summary reversal.

9

### B. Jyran Alleged a Viable Failure to Intervene Claim.

Nor are Defendants entitled to dismissal of Jyran's failure to intervene claim. Under 28 U.S.C. §1983, Defendants had an affirmative duty to protect Jyran from unreasonable force by another officer, provided they "observe[d] or [had] reason to know that a constitutional violation [was] being committed and possess[ed] a realistic opportunity to prevent the harm but fail[ed] to do so. *Abdullahi*, 423 F.3d at 774. Defendants argue <u>their</u> version of the incident that they had no realistic opportunity to stop the claim was the sole bad actor, Defendant Bates. But the Complaint alleges that Defendants were present when the event transpired and could have stopped him. At the pleading stage, the Court is duty-bound to accept the facts and inferences in Jyran's favor and assume the Defendants had a realistic opportunity to protect Jyran but refused to do so because Dumais was angry over Shawn Mitchell's temerity of allegedly committing "contempt of cop" while being black.

### C. Defendants Are Not Entitled to Sovereign Immunity Because They Had A General Duty to Jyran Independent of Their State Employment.

As to all of Jyran's state law claims, Defendants contend that they enjoy sovereign immunity from suit because, as state troopers, they exercised "discretionary" powers performing law enforcement duties, making the Illinois Court of Claims Jyran's only venue for relief. But sovereign immunity is foreclosed because the misconduct at issue did not arise from a breach of a duty imposed on them **solely** by virtue of their employment with the State of Illinois. *Turpin v. Koropchak*, 567 F.3d 880, 882-883 (7th Cir. 2009) ("[t]he question to ask … is whether the defendant breached a duty held *uniquely by State employees* holding the job at issue.)(emphasis added). The *Turpin* Court used an illustration of this legal point that is tailor-made for these particular Defendants, noting "[c]learly the State is not the real party in interest if a woman sued an off-duty trooper for mugging her on the way home from the grocery store. Everyone has a duty

10

to refrain from such conduct, State troopers no more (or less) than anyone else." 567 F.3d at 883.

Regardless of how Defendants earn their living (state troopers, plumbers, butchers, *etc.*), just like everyone else they have a general legal duty not to threaten or engage in unauthorized touching of other people, including black teenagers. They owed that duty independent of their employment as troopers; their status as state employees does not strip them of their general duty. This outcome is <u>not</u> altered by *Healy v. Vaupel*, 133 Ill.2d 295 (Ill. 1990). The *Healy* Court held that claims against state employees must be brought in the Court of Claims where, unlike here: (1) there are no allegations that an agent or employee of the State acted beyond the scope of his authority through wrongful acts; (2) the duty alleged to have been breached was not owed to the public generally independent of state employment; and (3) the complained-of actions involve matters ordinarily within that employees normal and official functions of the State.

Under *Healy*, the facts alleged in the Complaint clearly show Defendants are not entitled to sovereign immunity. First, while the use of reasonable force is within a state trooper's duties, using <u>unreasonable</u> force is not; the Complaint alleges the latter. Second, Defendants owed a general duty to refrain from unauthorized touching or threatening behavior independent of their employment as troopers. And here, that general duty would certainly prohibit Defendants from engaging in a racially motivated attack of an innocent high school honors student by throwing him face first into rocks on the ground, immediately after allowing another cop to kick out his knee. Third, it is not within a trooper's normal functions to attack suspects without cause – which is precisely what is alleged here. Judges of the Northern District of Illinois have consistently followed this line of reasoning. *See Cruz v. Cross*, Case No. 08 C 4873, 2010 U.S. Dist. LEXIS 94457 \*\*9-11 (N.D. Ill. Sept. 10, 2010) (Dow, J.) (applying *Healy* to deny immunity on Rule 12(b)(6) motion); *Donelson v. Prado*, Case No. 09 C 6227, 2011 U.S. Dist. LEXIS 27117 \*\*21-

11

22 (N.D. Ill. Mar. 16, 2011) (Feinerman, J.) ("A state law claim is barred by sovereign immunity only if, among other thing, "the duty alleged to have been breached was not owed to the public generally independent … of State employment … the duty to not commit an assault or battery arises independently of state employment, which means sovereign immunity does not defeat [Plaintiff's] assault and battery claims."); *Handy v. Evans*, Case No. 13 C 8795, 2014 U.S. Dist. LEXIS 171311 **4-5 (N.D. Ill. Dec. 11, 2014) (Kennelly, J.) ("Commission of intentional torts … clearly exceeds the scope of authority given to a correctional officer. No State employee has the authority to commit a legal wrong … and the duty to not to commit assault and battery is a general duty imposed upon all persons; it does not arise simply by virtue of the defendants' State employment.").

Judge Allen Walker's earlier decision granting Defendants sovereign immunity serves only one useful purpose: to be a cautionary tale of what <u>not</u> to do. Unlike federal court, Illinois is a fact-pleading jurisdiction, and Judge Walker believed that plaintiffs must affirmatively plead that beating up a black kid because of his race was outside the scope of a state trooper's duties in order to avoid dismissal under 735 ILCS 5/2-619. And without that type of allegation, Judge Walker believed he must accept Defendants' version of the incident (*i.e.*, that they were just conducting an investigation) and that their use of force, as a matter of law, was unique to their duties as a trooper. Jyran amended his Complaint <u>before</u> Defendants removed this case to federal court. Defendants' critique that it was unnecessary to allege the "legal conclusion" that it is outside the scope of a state trooper's duty to subject innocent black kids to a racially-motivated beating, is a point better directed to Judge Walker, who imposed that heightened pleading standard. No such requirement is imposed in federal court. *U.S. Gypsum Co. v. Ind. Gas Co., Inc.*, 350 F.3d 623, 628 (7th Cir. 2003) (holding complaints need not anticipate or allege facts to defeat affirmative

12

defenses to survive dismissal).

### D. Defendants' "Public Official Immunity" Argument Lacks Merit.

Defendants alternatively invoke "public official" immunity to defeat Jyran's state law claims, arguing that unless Jyran alleges fact showing that they acted with "malice," they are absolutely immune from Jyran's state law claims, citing numerous cases. (Br. at 14-15). Even if public official immunity was an option, which it is not, the facts previously summarized clearly demonstrate Defendants acted with malice. Even under Defendants' application of public official immunity, Jyran's state law claims survive dismissal.

And then there is the bigger problem: as this Court is surely aware, absolute immunity is reserved for the rarest of "public officials," including judges and prosecutors. *Stump v. Sparkman*, 435 U.S. 349 (1978) (judges); *Imbler v. Pachtman*, 424 U.S. 409 (1976) (prosecutors). Defendants are neither. None of the cases Defendants cite disturb that clearly established law of immunity or its affect. Police officers are never eligible for <u>absolute</u> immunity.

For example, *Aboufariss v. City of DeKalb*, 305 Ill. App.3d 1054, 1064 (2d Dist. 1999) granted public official immunity to a <u>prosecutor</u> from a malicious prosecution claim arising from a prior criminal prosecution. *Id*. at 1064 ("the decision to file charges, and the presentation of documents to the trial court fell within the protections of absolute immunity."). *Aboufariss* did <u>not</u> confer absolute immunity to police officers, instead concluding that the defendant police officers' eligibility for immunity was governed by the bedrock <u>qualified</u> immunity principles set forth in *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). *Id*. at 1066.

Similarly, in *Hanzel Const., Inc. v. Wehde & Southwick, Inc.*, 130 Ill. App. 196 (2d Dist. 1985), the litigation involved a contract dispute where a construction company sued the general contractor for a government construction project alleging, *inter alia*, "civil rights violations." *Id*.

at 198. The Court did not confer absolute immunity, but likewise applied the same federal *Harlow* qualified immunity analysis. *Id*. at 203-204. Finally, Defendants' reliance on *Campbell v. White*, 207 Ill. App. 3d 541, 554 (4th Dist. 1991) completely misses the mark insofar as it addressed the application of sovereign immunity in a negligence lawsuit involving a fatal high-speed police chase. *Id*. at 543-44. The Court held that because plaintiff was suing a state police officer for damages for his alleged negligent initiation of the chase, the action had to be pursued in the Illinois Court of Claims. Jyran's claims are clearly for intentional torts.

### E. Jyran's State Law Claims Survive Because Defendants Engaged In Willful and Wanton Conduct When They Viciously Attacked Jyran Without Probable Cause

The remainder of Defendants' arguments for dismissal of Jyran's false arrest, assault and battery claims rests entirely on the misapplication of the federal notice-pleading standard. Defendants contend that under their version, they had probable cause to arrest Jyran and that their conduct in arresting him does not rise to the level of not willful or wanton conduct necessary defeat the heightened protections that the Tort Immunity Act affords law enforcement officers to assault and battery claims. (Br. 14-20) As discussed above, the Complaint alleges that Defendants knew Jyran was not Shawn when they viciously slammed him to the ground due to retaliatory animus they harbored from Shawn's earlier alleged flight from the traffic stop. Doing so means that they both lacked probable cause and were acting in a willful and wanton manner. *Accord Moorer v. Platt*, Case No. 18 C 3796, U.S. Dist. LEXIS 27831 *6 (N.D. Ill. Feb. 19, 2020)(Shah, J.) ("[Plaintiff's] theory is that defendants knew the eyewitness identifications were false or unreliable and therefore did not provide probable cause … that is enough to get past the pleading stage).

Defendants' self-serving narrative that "they had grounds to suspect [the Jaguar] was stored out of sight in the home's garage" poses another problem: it relies on the Google Map of the 612 Goldenrod Circle residence. If the Court considers materials outside the Complaint, then it must

convert Defendants' motion into one for summary judgment and allow all parties a reasonable opportunity to present all materials pertinent to such a motion. Fed. R. Civ. P. 12(d); *Rutherford v. Judge & Dolph Ltd.*, 707 F.3d 710, 714-15 (7th Cir. 2013).[5]

### F. Jyran Has Alleged a Cognizable Claim for Civil Conspiracy

A conspiracy allegation is sufficient it if alleges the parties, the general purpose and the approximate date. *Loubser v. Thacker*, 440 F.3d 439, 443 (7th Cir. 2006). Defendants are clearly named as parties to the conspiracy. Compl., ¶¶99-109. The purpose of the conspiracy, to deprive Jyran of his civil rights by lying about the basis for their use of force and by how they concealed their use of excessive force is sufficiently specific. *Id.* ¶¶102-104. *Accord Hernandez v. Dart*, 635 F. Supp. 2d 798, 810 (N.D. Ill. 2009). Finally, the dates of the conspiracy are clear: February 2, 2018. That the conspiracy lacks a complex fact pattern is not a basis to dismiss at the pleading stage; they beat up a black kid and tried to hide it. Defendants have sufficient notice of the claim.

## V. CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss should be denied in its entirety.

Date: April 27, 2020

Respectfully submitted,

/s/ *Devlin J. Schoop*
Devlin J. Schoop
Counsel for Plaintiff Jyran Mitchell

---

[5]Plaintiff believes that there are conflicting accounts about numerous material facts dependent on credibility determinations which would preclude summary judgment. But Defendants clearly have their own interpretation of the rules of civil procedure and are anxious to tell their story. The current COVID-19 quarantine is an ideal time to commence summary judgment briefing if the Defendants insist. Plaintiff is willing to do so only because he wants to proceed to trial in February 2021, as previously set by Judge Walker; a possibility that this Court said would be entertained. (Dkt. No. 17) Permitting summary judgment briefing later in the year will needlessly delay a case that has been pending for almost two years where substantial discovery is already complete.

Devlin J. Schoop
THE COCHRAN FIRM
140 S. Dearborn – Suite 1020
Chicago, Illinois 60603
(312) 262-2900
dschoop@cochranfirm.com

# CERTIFICATE OF SERVICE

The undersigned certifies that on **April 27, 2020**, the foregoing **Plaintiff's Opposition Brief to Defendants' Motion to Dismiss** was electronically filed with the Clerk of the United States District Court for the Northern District of Illinois by filing through the CM/ECF system, which served a copy of the foregoing upon all counsel of record:

Michael J. McGrath
Lauren DaVelle
Odelson & Sterk, Ltd.
3318 W. 95th Street
Evergreen Park, IL 60805
mmcgrath@odelsonsterk.com

Emma Steimel
Daniel Berkowitz
100 W. Washington, Floor 13
Chicago, IL 60601
esteimel@atg.il.us
dberkowitz@atg.il.us

                      /s/ Devlin J. Schoop
                      Devlin J. Schoop