# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JYRAN MITCHELL,<br><br>    Plaintiff,<br><br>v.<br><br>VILLAGE OF MATTESON, OFFICER DOMINIC BATES, ILLINOIS STATE TROOPER MATTHEW DUMAIS, in his individual capacity; and ILLINOIS STATE TROOPER EDUARDO REYES, in his individual capacity,<br><br>    Defendants. | Case No.: 1:20-cv-00990<br><br>Judge Manish S. Shah<br><br>Magistrate Judge Young B. Kim |

## REPLY IN SUPPORT OF THE STATE DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

Defendants, Illinois State Police Trooper Matthew Dumais ("Trooper Dumais") and Illinois State Police Trooper Eduardo Reyes ("Trooper Reyes") (collectively, the "State Defendants"), by and through their attorney, KWAME RAOUL, Attorney General for the State of Illinois, in Reply to Plaintiff's Response to, and in further support of, their Motion to Dismiss the Second Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, state the following:

## INTRODUCTION

In his Response to the State Defendants' Motion to Dismiss, Plaintiff, Jyran Mitchell (the "Plaintiff" or "Jyran"), relies on the same sorts of legal conclusions that abound in the Second Amended Complaint, which results in his failure to state a valid claim. Throughout the Response Brief, Plaintiff urges this court to reject the State Defendants' "version" of events or the State Defendants' "narrative" in favor of the one Plaintiff weaves throughout his Response. The problem

with Plaintiff's argument, though, is that the State Defendants' recounting of events in its Motion to Dismiss is what can be derived from the well-pleaded factual allegations of the Second Amended Complaint, while the Plaintiff's "version" includes the types of legal conclusions and conclusory allegations not entitled to the presumption of truth. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). "[S]aying the magic words is not enough: [Plaintiff] must offer 'further factual enhancement.'" *Charleston v. Bd. of Trustees of Univ. of Illinois at Chicago*, 741 F.3d 769, 775 (7th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Additionally, the conflicting allegations in the Second Amended Complaint undercut the narrative Plaintiff presents in his Response, demonstrating further the need for dismissal.

When considering only the factual allegations of the Second Amended Complaint, it becomes clear the Plaintiff fails to properly state causes of action for excessive force or for failure to intervene in violation of 42 U.S.C. § 1983. Even if those causes of action had been properly pled, the State Defendants are entitled to qualified immunity for those federal claims. Likewise, the Plaintiff fails to properly state causes of action for the alleged state-law claims of false arrest, battery, and conspiracy. Again, even if the Plaintiff had properly alleged these state-law claims, they must be dismissed because the State Defendants are entitled to the protection of sovereign immunity and public official immunity under Illinois law. Since the Plaintiff cannot sustain any of his causes of action against the State Defendants, they should be dismissed from this case with prejudice.

## ARGUMENT

**I. Plaintiff's Federal Claims Against the State Defendants Should be Dismissed.**
   **A. Plaintiff fails to state a claim for excessive force; Count V should therefore be dismissed as to the State Defendants.**

As articulated in the State Defendant's Motion to Dismiss, Plaintiff failed to properly state a claim for excessive force because he did not allege facts showing the State Defendants used an unreasonable amount of force. In Response, Plaintiff argues the story told by the allegations of the Second Amended Complaint show the force used by the State Defendants was not reasonable under the circumstances. (Resp. Br., p. 5–7). To ballast this story, Plaintiff in his Response argues the Second Amended Complaint clearly alleges that the State Defendants knew Jyran was not his brother Shawn, knew that Shawn was the driver who fled from the traffic stop, and had a retaliatory, racial animus, which was the reason for the force used against Jyran. *Id*.

The problem with this argument, though, is it is undercut by the conflicting factual allegations of the Second Amended Complaint. The Defendants allegedly knew that the 2013 Jaguar involved in the traffic stop that fled was registered to Shawn Mitchell and registered to the address of 612 Goldenrod Circle. (Dkt. 1-4, ¶¶ 21, 25). The Defendants allegedly knew what Shawn Mitchell looked like from his photo on the Secretary of State drivers' license database. *Id*. at ¶¶ 22, 26. While at 612 Goldenrod Circle, Defendants allegedly observed a 2017 Chevrolet Malibu and "either could have or did actually" confirm the vehicle was different from the one that fled the traffic stop. *Id*. at ¶¶ 30–31. Further, the Malibu was registered to Jyran and the picture of Jyran would have shown he was a different person than Shawn. *Id*. at ¶ 32. But none of these allegations demonstrate the State Defendants knew that Jyran was not the driver who fled. They could not, since Second Amended Complaint also alleges the windows of the 2013 Jaguar involved in the traffic stop were "tinted and Defendant Dumais could not see into the vehicle or who was driving the vehicle." *Id.* at ¶ 17. Further, even if the allegations demonstrated the officers knew Shawn was the driver of the vehicle that fled, none of these allegations demonstrate the officers knew Jyran was not his brother Shawn when first encountering him at the registered address of the

3

vehicle. *See Muhammad v. Pearson*, 900 F.3d 898, 909 (7th Cir. 2018) (an arresting officer may reasonably believe a person residing at a suspect's registered address is that suspect). The "reasonableness" of the use of force is judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight, and the officer's subjective good or bad intentions do not enter into the analysis. *Id.* at 396–97. "An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Id.* at 397. Therefore, the conclusory allegations made in the Second Amended Complaint, and the arguments made in the Plaintiff's Response regarding the State Defendants' allegedly "evil intentions" should not enter into this Court's analysis. Those allegations are irrelevant under *Graham*.

Not a single fact alleged by Plaintiff in the Second Amended Complaint takes the State Defendants actions outside the realm of objectively reasonable. The Plaintiff alleges that the State Defendants went to the registered address of a car that fled a traffic stop, questioned Plaintiff and his grandmother, and, when Plaintiff stepped out of the home, pushed him across the yard and attempted to perform an "emergency takedown." (Dkt. 1-4, ¶¶ 48–49). The State Defendants then took Plaintiff to one of their vehicles, and, after further investigation revealed Plaintiff was not the suspect who fled the traffic stop, released him. *Id.* at ¶¶ 63–65. Removing from consideration legal conclusions and conclusory allegations not entitled to the "presumption of truth," that is the factual basis for Plaintiff's claim of excessive force against the State Defendants. *McCauley*, 671 F.3d at 616 (legal conclusions and conclusory allegations not entitled to the presumption of truth in a Rule 12(b)(6) analysis). Despite his protestations in the Response brief, the force allegedly used by the State Defendants (excluding co-Defendant Bates' alleged conduct) amounted to nothing more than pushing and shoving, making the instruction of the Seventh Circuit in *Sow* applicable here. *Sow v.*

4

*Fortville Police Dept.*, 636 F.3d 293, 304 (7th Cir. 2011) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment.").

In his Response brief, Plaintiff argues the kick of Jyran's knee by co-Defendant Bates must be considered by this Court, and blame attributed to the State Defendants, under a totality of circumstances analysis under *Graham*. (Resp. Br., p. 8). Plaintiff says the State Defendants "knowingly created the false perception that Jyran was a resistant suspect by violently yanking his body back-and-forth like a ragdoll," and it was "easily foreseeable that Bates would come to their 'aid' and intentionally injure Jyran after being 'primed to pummel' by Defendants." *Id*. Plaintiff cites no law supporting this argument as a legal proposition. Further, these allegations that the State Defendants violently yanked Jyran back-and-forth like a ragdoll and invited the kick from co-Defendant Bates appear nowhere in the Second Amended Complaint. *See* (Dkt. 1-4, ¶¶ 38–65, 118–123). This argument should, therefore, carry no weight in this Court's analysis.

Judging the reasonableness of the use of force in this case "from the perspective of a reasonable officer on the scene," it is clear that the use of force in this case was reasonable. *Graham*, 490 U.S. at 396. The State Defendants used the amount of force necessary to briefly subdue and detain a resident of 612 Goldenrod Circle to ascertain whether he was the same driver who fled from the traffic stop earlier in the evening. Once the State Defendants determined Plaintiff was not the suspect driver, they released him. (Dkt. 1-4, ¶ 65). There is no conduct alleged against the State Defendants that escapes the reasonable use of force during their investigation of the underlying crime of fleeing a traffic stop.

### B. State Defendants are entitled to Qualified Immunity as to Count V

Even if this Court finds Plaintiff has stated a proper claim for excessive force against the State Defendants, the claim for excessive force in Count V should be dismissed because they are

entitled to qualified immunity. As established in the State Defendants' opening brief, qualified immunity "protects police officers who act in ways they reasonably believe to be lawful." *Wheeler v. Lawson*, 539 F.3d 629, 639 (7th Cir. 2008). The protection of qualified immunity applies to mistakes of law, mistakes of fact, or mistakes based on mixed questions of law and fact. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity is effectively immunity from suit, and the Supreme Court has urged that it "be resolved at the earliest possible stage of litigation." *Hunter v. Bryant*, 502 U.S. 224, 233–34 (1991). Qualified immunity "provides ample room for mistaken judgments and protects all but the plainly incompetent and those who knowingly violate the law." *Glickman v. Vill. of Morton Grove*, 18-cv-4931, 2019 WL 1754091, *8 (Shah, J.) (citing *Wheeler*, 539 F.3d at 639) (internal quotations omitted). "Accordingly, qualified immunity is an available defense for officers who make a reasonable error in determining whether there is probable cause to arrest an individual." *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009).

In his brief, Plaintiff dismisses the factually analogous *Boyd v. Angarone*, 729 F. Supp. 1194 (N.D. Ill. 1990) case because that decision was made on a motion for summary judgment. (Resp. Br., p. 5 n. 3). Plaintiff fails to engage at all with the reasoning behind the *Boyd* decision, specifically how the *Boyd* decision demonstrates why qualified immunity applies to this factually-similar case. The lesson of *Boyd* is that qualified immunity applies when the police make a reasonable mistake and arrest the wrong suspect, even when the officers had access to a piece of information that would have excluded that person from suspicion. *Boyd*, 729 F. Supp at 1195–98. Despite Plaintiff's arguments in his Response that the State Defendants knew they were detaining an innocent man, as explained above, the allegations of the Second Amended Complaint conflict with regard to whether the State Defendants knew or could have known Jyran was the driver who fled the traffic stop.

6

At most, the allegations of the Second Amended Complaint establish the State Defendants made a mistake regarding Jyran's identity when he was detained. But, under qualified immunity, mistakes are allowed. *Pearson*, 555 U.S. at 231. Even if Plaintiff had alleged sufficient facts to state a claim for excessive force under § 1983 against the State Defendants, the well-pled factual allegations of the Second Amended Complaint reveal that the State Defendants are entitled to qualified immunity as a matter of law. The question of qualified immunity should be resolved at this "earliest possible stage of litigation." *Hunter*, 502 U.S. at 233–34. Accordingly, Count V against the State Defendants should be dismissed.

### C. Plaintiff fails to state a claim for failure to intervene; Count VI should therefore be dismissed as to the State Defendants.

In their opening brief, the State Defendants demonstrated that Plaintiff failed to state a claim of failure to intervene against the State Defendant because he failed to allege sufficient facts to demonstrate that the State Defendants had a realistic opportunity to prevent the sudden kick of Defendant Bates from occurring. Plaintiff's response to this argument was that the Second Amended Complaint alleges the State Defendants could have stopped Defendant Bates from kicking Jyran and they did not, so the claim was properly stated. (Resp. Br., p. 10). This response though, does not address the problems raised in the Motion to Dismiss with Plaintiff's failure to intervene claim that warrant dismissal.

First, as we noted in the Motion to Dismiss, Plaintiff's conclusory allegations that the State Defendants are liable for a failure to intervene to prevent Defendant Bates' kick because, essentially, they failed to intervene is precisely the type of conclusory allegation not entitled to the "presumption of truth" during this Court's analysis. (Dkt. 1-4, ¶ 127); *McCauley*, 671 F.3d at 616. Plaintiff's Response merely continues to feed into this conclusory narrative without pointing to any substantive factual allegations to show how the State Defendants failed to intervene. Which

7

leads to the second main problem with Plaintiff's failure to intervene claim: there are no factual allegations demonstrating that the State Defendants had a realistic opportunity to intervene to prevent the harm from occurring. *Chavez v. Illinois State Police*, 251 F.3d 612, 652 (7th Cir. 2001).

One of the cases cited by Plaintiff in his Response Brief illustrates precisely how the Second Amended Complaint falls short of showing a claim for failure to intervene. In *Green v. Chvala*, 567 Fed. Appx. 458 (7th Cir. 2014), the plaintiff alleged a claim for failure to intervene against officers who stood by when a fellow officer kneed plaintiff in the ribs while plaintiff was lying motionless and handcuffed on the ground. The *Green* court affirmed the dismissal of the failure to intervene claims against the officers because, even taking the Plaintiff's allegations as true, "[plaintiff] asserted that [defendant] kneed him just once and stopped, so there was no chance for the officers to step in and no need to warn [defendant] to stop." *Id*. at 461. This is obviously factually similar to the circumstance here, where Plaintiff alleges that Defendant Bates "ran toward Jyran and violently kicked the side of Jyran's knee" while the State Defendants were in the course of handcuffing Jyran. (Dkt. 1-4, ¶ 50). The facts as alleged, even when taken as true, are not enough to maintain a claim for failure to intervene against the State Defendants. Plaintiff has failed to show that the State Defendants had a realistic opportunity to prevent the harm from occurring. *Chavez*, 251 F.3d at 652. This Court should, therefore, dismiss with prejudice Plaintiff's claim of failure to intervene against the State Defendants.

**D. State Defendants are entitled to Qualified Immunity as to Count VI**

In their opening brief, the State Defendants also demonstrated that even if Plaintiff stated a proper claim of failure to intervene against the State Defendant, the cause of action must be dismissed because qualified immunity applies. This was because there is no clearly established law holding that a police official who is engaged in detaining a suspect has to simultaneously

watch fellow officers and prevent sudden kicks those officers may perform from occurring or else violate the constitutional rights of that suspect. The Plaintiff made no response to this argument in his brief. This Court should find, therefore, that Plaintiff's failure to intervene claim against the State Defendants should be dismissed on qualified immunity grounds.

**II. Plaintiff's state-law claims should be dismissed.**

Since Plaintiff has failed to state any federal claim, "[a] general presumption in favor of relinquishment" of supplemental jurisdiction of state law claims applies; accordingly, Plaintiff's state law claims should be dismissed. *RWJ Mgmt. Co., Inc. v. BP Products North America, Inc.*, 672 F.3d 476, 478 (7th Cir. 2012). Even if the court were to retain supplemental jurisdiction, Plaintiff's state law claims are barred by sovereign immunity and public official immunity.

### A. Plaintiffs' state-law claims against the State Defendants are barred by the sovereign immunity doctrine.

In their opening brief, the State Defendants demonstrated that they are entitled to the protection of sovereign immunity against Plaintiff's state-law claims because (1) the State Defendants were acting at all times in their official capacity as State employees, (2) the duties that the State Defendants allegedly breached arose solely because of their status as State Police employees, and (3) the actions Plaintiff complains of concern matters within the State Defendants' normal functions as State Police employees. In his Response brief, Plaintiff argues sovereign immunity does not apply because State Defendants owed a general duty to refrain from unauthorized touching or threatening behavior independent of their State employment. (Resp. Br., p. 10–12). Plaintiff cites to *Turpin v. Koropchak*, 567 F.3d 880 (7th Cir. 2009) and its example of "an off-duty trooper" mugging a woman "on the way home from the grocery store" to demonstrate why sovereign immunity does not apply in this case. *Id.* at 883. But the example does not fit. The Troopers in this case were on-duty, and they were not mugging anyone. They handcuffed and

9

briefly detained a suspect to conduct further investigation in response to a crime. (Dkt. 1-4, ¶¶ 36–41, 49, 63–65). Once that further investigation occurred, the suspect was freed. *Id*.

Plaintiff then cites Northern District of Illinois cases holding that sovereign immunity does not apply where a valid claim of assault and battery is alleged. These cases are inapplicable to this case, however, because the Plaintiff has failed to plead a proper cause for battery against the State Defendants. As demonstrated in the opening brief, and as discussed below, under Illinois law, an arresting officer is generally entitled to use any force reasonably necessary to effect the arrest, so long as they do not use excessive force. *Rusinowski v. Vill. of Hillside*, 19 F. Supp. 3d 798, 810 (N.D. Ill. 2014). This is an essential element of a battery cause of action against public employees like the State Defendants. *Gill v. Vill. of Melrose Park*, 35 F. Supp. 3d 956, 967 (N.D. Ill. 2014). Thus, an arresting officer's reasonable physical contact for the purpose of holding a suspect and effecting an arrest cannot constitute a battery. *Id*. The factual allegations of the Second Amended Complaint do not demonstrate the State Defendants used unreasonable force. (Dkt. 1-4, ¶¶ 14–19, 21–23, 31–32, 49, 63–65). Furthermore, the act of arresting a person suspected of fleeing the police is expressly within the scope of the State Defendants' State employment. 725 ILCS 5/107-2(1); *see also Kawaguchi v. Gainer*, 361 Ill. App. 3d 229, 242 (2d Dist. 2005) (State Police troopers are entrusted by the ISP with the duty of policing). The alleged actions of the State Defendants and the duty they allegedly breached are necessarily tied up in their employment as State Police troopers.

Plaintiff also flippantly rejected the applicability of Cook County Circuit Court Judge Walker's earlier dismissal of these identical claims against the State Defendants, characterizing it as only useful as "a cautionary tale of what <u>not</u> to do." (Resp. Br., p. 12). It is not surprising the Plaintiff wishes for this Court to ignore a Judge's well-reasoned decision in favor of the State

Defendants concerning the sovereign immunity issue. (Memo. Iso Mot. to Dis. **Ex. A**). That decision conducted a proper legal analysis based on the Plaintiff's First Amended Complaint, which included factual allegations substantially similar to those alleged in the Second Amended Complaint. In his opinion granting the State Defendant's Motion to Dismiss, Judge Walker correctly found that: (1) the State Defendants' actions were performed within the scope of their authority; (2) there is no duty imposed upon the State Defendants independent from their duty as police officers for the State; and (3) the State Defendants acted within their normal and official functions. **Ex. A**, p. 4–7 (citing to *Jackson v. Alverez*, 358 Ill. App. 3d 555, 561–62 (4th Dist. 2005), *Grainger v. Harrah's Casino*, 2014 IL App (3d) 130029 at ¶ 34, *Shirley v. Harmon*, 405 Ill. App. 3d 86, 96 (2d. Dist. 2010)). Plaintiff has failed to articulate any reason why this Court should decide the sovereign immunity issue differently. Therefore, Plaintiffs' state-law claims against the State Defendants should be dismissed with prejudice on the grounds they are barred by sovereign immunity. *See Gandhi v. Sitara Capital Mgmt., LLC*, 721 F.3d 865, 868-69 (7th Cir. 2013) (courts may deny leave to amend if futile).

### B. Plaintiff's state-law claims against the State Defendants are barred by the public official immunity doctrine.

In their opening brief, the State Defendants demonstrated that they are entitled to the protection of public official immunity from Plaintiff's state-law claims because they are public officials, whose alleged actions were entirely governmental in character and within their discretion as State Police troopers. In response, the Plaintiff argues in his brief that the State Defendants, as police officers, are not entitled to the same absolute immunity offered to judges or prosecutors. (Resp. Br., p. 13–14). This argument misses the mark. The State Defendants have never maintained they are entitled to absolute immunity, only that they are entitled to public official immunity under Illinois law. The law is clear in Illinois that public officials are immune from liability for "acts

11

performed within their official discretion." *Aboufariss v. City of De Kalb*, 305 Ill. App. 3d 1054, 1064–65 (2d Dist. 1999). The law is also clear that apprehending a suspected criminal is a uniquely governmental function to which public official immunity applies. *Campbell v. White*, 207 Ill. App. 3d 541, 554 (4th Dist. 1991). The only way this doctrine does not apply is if the public official acted with "actual malice." *Aboufariss*, 305 Ill. App. 3d at 1065.

Plaintiff argues it has demonstrated the State Defendants acted with malice. (Resp. Br., p. 13). But Plaintiff rests this argument on unsupported, conclusory allegations not entitled to the "presumption of truth," which should be disregarded. *McCauley*, 671 F.3d at 616. The well-pleaded factual allegations demonstrate the State Defendants apprehended the Plaintiff after learning that a car registered to the Plaintiff's address was involved in a criminal offense. (Dkt. 1-4, ¶¶ 16–19, 21–23). The State Defendants reasonably believed the Plaintiff to be a suspect who had previously fled the police, based on vehicle registration information and approximate description. *Id.* at ¶¶ 16–19, 21–23, 36–37). The allegations of the Second Amended Complaint establish that they acted within their official government discretion, with reasonable cause. Accordingly, Plaintiffs' state-law claims against the State Defendants are barred by public official immunity and should be dismissed with prejudice. *See Gandhi*, 721 F.3d at 868-69 (courts may deny leave to amend if futile).

### C. Plaintiff's state-law claims also fail on the merits.
#### 1. The State Defendants had probable cause to detain the Plaintiff.

The State Defendants demonstrated in their opening brief that Plaintiff's state-law false arrest cause of action must be dismissed because the factual allegations of the Second Amended Complaint demonstrate the State Defendants had probable cause to arrest Plaintiff. The only response given by the Plaintiff is that the Second Amended Complaint has alleged a proper cause of action for false arrest under the federal notice-pleading standard because he has demonstrated

they lacked probable cause. (Resp. Br., p. 14). Plaintiff's unfounded conclusions as to the lack of probable cause cannot sustain a claim for false arrest. *McCauley*, 671 F.3d at 616.

The existence of probable cause for an arrest "is a complete defense" to false arrest and malicious prosecution actions under both Illinois and Federal law. *Penn v. Chicago State Univ.*, 162 F. Supp. 2d 968, 975 (N.D. Ill. 2001), *aff'd sub nom. Penn v. Harris*, 296 F.3d 573 (7th Cir. 2002); *Lappin v. Costello*, 232 Ill. App. 3d 1033, 1041–42 (4th Dist. 1992). Probable cause in this context means the existence of facts and circumstances which would lead a reasonable person "to believe or entertain an honest and strong suspicion that the person arrested is guilty." *Lappin*, 232 Ill. App. 3d at 1042; *see also Penn*, 162 F. Supp. 2d at 976. "Thus, as long as the officer's belief is reasonable, it need not be correct; reasonable mistakes will be excused." *Ochana v. Flores*, 199 F. Supp. 2d 817, 833 (N.D. Ill. 2002), *aff'd,* 347 F.3d 266 (7th Cir. 2003).

As explained above, the Second Amended Complaint contains contradictory allegations regarding Plaintiff's claim that the State Defendants knew Jyran was not the suspect who fled the traffic stop and arrested him anyway. The properly-pled factual allegations establish the State Defendants were aware that a vehicle which had fled a traffic stop was registered at the Plaintiff's home address. (Dkt. 1-4, ¶¶ 16–19, 21–23). When the Plaintiff—reasonably suspected of being a suspect who had fled from the police—stepped out of the residence, the State Defendants briefly detained the Plaintiff in front of his home just long enough to relieve their suspicions by independently verifying his identity *Id.* at ¶¶ 36–41, 49. Once they conducted further investigation, they let Jyran free. *Id.* at ¶¶ 63–65. These facts, as alleged, preclude a false arrest cause of action since it demonstrates the State Defendants had probable cause to detain the Plaintiff. *See Hull v. City of Chicago*, 624 Fed. Appx. 436, 438 (7th Cir. 2015) (police officers mistakenly arrested the wrong brother, but they had probable cause and their mistake was reasonable, so the arrest was

13

valid). Therefore, this Court should dismiss the false arrest cause of action against the State Defendants with prejudice.

### 2. The State Defendants did not engage in willful and wanton conduct, or use unreasonable force and therefore did not commit battery.

The State Defendants demonstrated in their opening brief that Plaintiff's state-law battery cause of action must be dismissed because their conduct did not exhibit willful and wanton disregard for the safety of others. The only response given by the Plaintiff is that the Second Amended Complaint has alleged a proper cause of action for battery under the federal notice-pleading standard because he has demonstrated they acted in a willful and wanton manner. (Resp. Br., p. 14). The Second Amended Complaint, without the conclusory allegations and legal conclusions this Court should not consider, does not establish a proper basis for Plaintiff's battery claim.

As discussed above, under Illinois law, an arresting officer is generally entitled to use any force reasonably necessary to effect the arrest, so long as they do not use excessive force. *Rusinowski*, 19 F. Supp. 3d at 810. This is an essential element of a battery cause of action against public employees like the State Defendants. *Gill*, 35 F. Supp. 3d at 967. Thus, an arresting officer's reasonable physical contact for the purpose of holding a suspect and effecting an arrest cannot constitute a battery. *Id*. The factual allegations of the Second Amended Complaint do not demonstrate the State Defendants used unreasonable force. The State Defendants' only physical contact with the Plaintiff was restraining and moving the Plaintiff to a police vehicle to investigate the Plaintiff's claims that he was not a suspect. (Dkt. 1-4, ¶¶ 16–19, 21–23, 36–41, 49, 63–65). This Court must disregard the Plaintiff's numerous unfounded conclusion that the Defendants physical contact was not legally justified, because the facts pleaded do not permit such an inference or conclusion. *Id.* at ¶¶ 111–116. The State Defendants made only lawful contact with the Plaintiff.

*See Gill*, 35 F. Supp. 3d at 967; *Rusinowski*, 19 F. Supp. 3d at 810. Therefore, this Court should dismiss the Plaintiff's cause of action for battery against the State Defendants.

### 3. The State Defendants did not conspire against Plaintiff

In the opening brief, the State Defendants established that Plaintiff cannot sustain his state-law conspiracy cause of action against them because he could not establish they took some underlying unlawful act in furtherance of the alleged conspiracy. In Response, the Plaintiff argues he has properly alleged a conspiracy claim because he has alleged the parties, the general purpose, and the approximate date. (Resp. Br., p. 15). This Response, though, merely relies upon the conclusory allegations of the Second Amended Complaint, (Dkt. 1-4, ¶¶ 99–109), that should be disregarded in this Court's analysis. *McCauley*, 671 F.3d at 616. The Plaintiff cannot reasonably plead a conspiracy based on the lawful detention actually pled, there has to be some underlying unlawful act. *Fiala v. Bickford Sr. Living Grp., LLC*, 2015 IL App (2d) 150067, ¶ 62. "[T]he absence of any underlying violation of Plaintiff's rights precludes the possibility of Plaintiff succeeding on a conspiracy claim." *Sow*, 636 F.3d at 305. As established above, the State Defendants did not undertake any unlawful actions. This Court should, therefore, dismiss Plaintiff's civil conspiracy cause of action with prejudice.

### **CONCLUSION**

For the reasons stated above, the State Defendants should be dismissed from this action with prejudice.

WHEREFORE, State Defendants, Illinois State Trooper Matthew Dumais and Illinois State Trooper Eduardo Reyes, respectfully request that this Court enter an order granting their motion to dismiss, dismissing them from the action with prejudice, and for any other and further relief this Court deems appropriate.

Respectfully Submitted,

| | |
|---|---|
| KWAME RAOUL<br>Attorney General of Illinois | */s/* Daniel J. Berkowitz<br>Daniel J. Berkowitz<br>Assistant Attorney General<br>General Law Bureau<br>100 W. Randolph Street, 13th Floor<br>Chicago, Illinois 60601<br>(312) 814-3649<br>dberkowitz@atg.state.il.us |

**CERTIFICATE OF SERVICE**

    Under penalties as provided by law pursuant to applicable rules of civil procedure and local rules, the undersigned certifies that he caused a copy of the foregoing, and all attached exhibits, to be served upon the parties and/or counsel listed below via electronic service through the court's electronic filing system and/or e-mail at or before 5:00 p.m. on May 7, 2020.

                                                                                       /s/ Daniel J. Berkowitz<br>
                                                                                       Daniel J. Berkowitz

| Counsel for Plaintiff:<br><br>Victor P. Henderson<br>Devlin J. Schoop<br>THE COCHRAN FIRM<br>140 S. Dearborn – Suite 1020<br>Chicago, Illinois 60603<br>vhenderson@cochranfirm.com<br>dschoop@cochranfirm.com | Counsel for Defendants Village of Matteson and Matteson Police Officer Dominic Bates<br><br>Michael J. McGrath<br>ODELSON & STERK, LTD.<br>3318 West 95th Street<br>Evergreen Park, IL 60805<br>mmcgrath@odelsonsterk.com |
|---|---|