UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JYRAN MITCHELL, <br><br> Plaintiff, <br><br> v. <br><br> VILLAGE OF MATTESON, et al., <br><br> Defendants. | No. 20 CV 990 <br><br> Judge Manish S. Shah |

### MEMORANDUM OPINION AND ORDER

After a black Jaguar fled a traffic stop, three police officers (two state, one local) went to the car owner's address and, although the Jaguar was not there, approached the house. They spoke to plaintiff Jyran Mitchell, a high school senior, who explained that the car's owner, Shawn Mitchell, was not home. The officers asked Jyran Mitchell a question that caused him to step outside the house. The two state troopers grabbed Mitchell by each arm and tried to push him to the ground, while the local officer ran toward the group and kicked Mitchell in the knee, tearing his meniscus.[1] After pushing Mitchell into some rocks on the ground, the officers forced him into a police car, where they determined he was not the driver of the Jaguar and released him. Jyran Mitchell sued the three officers and the Village of Matteson, bringing claims of federal civil-rights violations and state-law torts. The two state troopers

---

[1] At this stage of the case, I accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiffs' favor. *Sloan v. Am. Brain Tumor Ass'n*, 901 F.3d 891, 893 (7th Cir. 2018).

move to dismiss all claims against them under Rule 12(b)(6). For the reasons discussed below, the motion is denied in part, granted in part.

I. **Legal Standards**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). The complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

II. **Background**

State trooper Matthew Dumais tried to pull over a black Jaguar with tinted windows on I-294. [1-4] ¶¶ 16–17.[2] The Jaguar pulled over, but when Dumais got out of his car, the Jaguar drove away. [1-4] ¶ 18. Dumais could not see the driver, but ran the license plate and learned that the car was registered to Shawn Mitchell at an address in Matteson, Illinois. [1-4] ¶ 22. Dumais could see Mitchell's driver's license picture from the state driver's license database. [1-4] ¶ 22. Dumais went to the address, a house in a residential neighborhood. [1-4] ¶¶ 23, 28. Matteson police officer Dominic Bates and state trooper Eduardo Reyes met Dumais at the house. [1-4] ¶¶ 24–27, 29. The officers did not see the Jaguar there, but a 2017 Chevrolet Malibu registered to Jyran Mitchell was parked in the driveway. [1-4] ¶¶ 30, 32–33. The

---

[2] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. Facts are taken from the complaint.

officers either did or could have run the Malibu's plates and seen a picture of Jyran Mitchell. [1-4] ¶¶ 31–32.

The officers approached the house, and Carolyn Mitchell answered. [1-4] ¶¶ 35, 38–39. She told them that Shawn Mitchell was not home. [1-4] ¶ 40. Jyran Mitchell, her grandson, came downstairs and repeated that Shawn, his brother, was not home, and that he was not Shawn. [1-4] ¶¶ 36, 41–42. The officers asked Jyran Mitchell if "that was his car," while gesturing at the driveway. [1-4] ¶¶ 45, 47. Mitchell couldn't see the driveway from the doorway of the house, so he stepped outside to look. [1-4] ¶¶ 46, 48.

After Jyran Mitchell stepped outside, Dumais grabbed his left arm and Reyes grabbed his right arm, and they pushed Mitchell across the yard to perform an "emergency takedown." [1-4] ¶ 49. Dumais and Reyes tried to throw him to the ground, and Bates ran toward them and kicked the side of Mitchell's knee, causing it to buckle. [1-4] ¶ 50. The officers pushed Mitchell into rocks on the ground, then lifted him up and took him to one of the police cars. [1-4] ¶¶ 51, 62. Mitchell told the officers to look up the Malibu and check his license, which showed his name. [1-4] ¶ 64. Once in the police car, the officers entered information into a laptop, then pulled Mitchell out of the car and released him. [1-4] ¶ 65. Bates wrote a false police report that omitted any mention of the officers assaulting Mitchell. [1-4] ¶ 69.

As a result of the incident, Mitchell suffered a torn meniscus in his knee, which required surgery and rehabilitation. [1-4] ¶ 70. He missed the final two months of his senior basketball season, as well as the entire track and field season. [1-4] ¶¶ 71–72.

3

He also hoped to play college and professional football, but, because of his knee, began his college football career as a "red shirt," meaning he was ineligible to play in certain games. [1-4] ¶¶ 75–76. Mitchell alleges that the officers assaulted him because he was African-American. [1-4] ¶ 52.

Mitchell initially sued in state court and brought only state-law claims. Dumais and Reyes moved to dismiss on the basis of sovereign immunity, and the Circuit Court of Cook County granted that motion. [18-2]. Mitchell then amended his complaint, adding federal counts, and the Village removed the case to federal court.

Mitchell now brings state-law claims of false-arrest, conspiracy, and battery against the three officers in their individual capacities, and claims for excessive force and failure to intervene under 42 U.S.C. § 1983 against the officers.[3] He also brings claims for indemnification and respondeat superior against the Village of Matteson.

Dumais and Reyes move to dismiss all the claims against them (Counts II, III, IV, V, and VI) for failure to state a claim.

**III. Analysis**

    **A. Federal Claims**

        *1. Excessive Force*

The Fourth Amendment prohibits the use of excessive force during a seizure. *Graham v. Connor*, 490 U.S. 386, 394–95 (1989); *Archer v. Chisholm*, 870 F.3d 603, 617 (7th Cir. 2017). Force is excessive if, in light of the totality of the circumstances,

---

[3] Mitchell pleads that he was falsely arrested in violation of "Illinois law and federal law." [18-4] ¶ 96. But both parties treat the claim as based in state law only, so I infer that it is meant to be a state-law claim.

4

it was greater than reasonably necessary to effectuate the seizure. *Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 519 (7th Cir. 2012); *Holmes v. Vill. of Hoffman Estate*, 511 F.3d 673, 685 (7th Cir. 2007). To assess whether the degree of force was justified, courts consider the severity of the crime for which the plaintiff was detained or arrested, whether he posed a threat to the safety of the officers or to others, and whether the plaintiff was resisting the officers or attempting to flee. *Holmes*, 511 F.3d at 685 (citing *Graham*, 490 U.S. at 396). Courts view the facts from the perspective of a reasonable officer at the time of the seizure. *Archer*, 870 F.3d at 617.

Mitchell's complaint states a claim for excessive force. Mitchell alleges that he was in his home, came downstairs to help his grandmother respond to the police, and told the police that his brother, Shawn, the person the officers were looking for, was not home. In response, the officers began gesturing at the driveway, which Mitchell could not see from the doorway of his house, causing him to step outside. Dumais and Reyes then grabbed Mitchell by both arms, pushed him down into rocks, stood by as Bates kicked him in the knee, and forced him into the police car. None of the *Graham* factors weigh in favor of the defendants on those facts. Setting aside for the moment that Jyran Mitchell was not the person who had been driving the Jaguar, the officers were not investigating a violent crime; although fleeing from a traffic stop poses risks to the safety of others, the circumstances alleged in the complaint (with inferences drawn in plaintiff's favor) were not particularly serious. Nor did Mitchell pose any threat to the officers, or anyone else. He was suspected of a misdemeanor traffic offense, and was calmly answering the officers' questions in his own home, in view of

5

his grandmother. He stepped outside to answer the officers' question and was needlessly grabbed. Further, the complaint alleges that Mitchell was not resisting, and there is no allegation that he attempted to flee. The officers insist that they used the "amount of force necessary" to "briefly subdue and detain" Mitchell to determine whether he was the driver who had fled from the traffic stop. [18-1] at 10. But taking Mitchell's factual allegations as true, there was no reason to subdue Mitchell at all. He was not agitated, did not threaten the officers, and complied with their questions and demands. If the officers wanted to determine whether Mitchell was the driver of the Jaguar, they could have calmly asked to see his license, or run the Malibu's plates, as they eventually did. There was no reason for Dumais and Reyes to use any force under the alleged circumstances, let alone to team up and wrangle Mitchell to the ground when he presented no threat whatsoever. *See Phillips*, 678 F.3d at 524 (officers used excessive force under *Graham* when plaintiff was never actively resisting arrest, never exhibited any aggressive behavior toward the officers, and made no attempt to escape). Mitchell has stated a claim for excessive force.

   2. *Failure to Intervene*

To state a claim for failure to intervene under § 1983, a plaintiff must plead that the law enforcement officer had reason to know that a fellow officer was using excessive force or committing a constitutional violation, and had a realistic opportunity to intervene to prevent the act. *Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir. 2009). A realistic opportunity to intervene exists when an officer could have

called for backup, called for help, or at least warned the other officer to stop. *Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005).

Mitchell has stated a plausible failure-to-intervene claim. He alleges that while Dumais and Reyes grabbed him by the arm and tried to push him down, Bates "ran toward" the group and kicked Mitchell in the knee. As alleged, Dumais and Reyes had some warning that Bates was about to unnecessarily use force against Mitchell, as they would have seen Bates running across the lawn to take some physical action. And there was no reason for Bates to approach the group at all—Dumais and Reyes had Mitchell under control, and would have known that Bates's approach could only signal additional gratuitous force. The complaint plausibly alleges that Dumais or Reyes could have told Bates to stand down. Mitchell has stated a claim for failure to intervene.

### 3. *Qualified Immunity*

Dumais and Reyes argue that, even if Mitchell has stated a claim, they are entitled to qualified immunity on both § 1983 claims. Qualified immunity typically turns on the facts of the case, so a complaint is generally not dismissed on qualified-immunity grounds. *Reed v. Palmer*, 906 F.3d 540, 548 (7th Cir. 2018); *see also Doe v. Purdue Univ.*, 928 F.3d 652, 665 (7th Cir. 2019) (qualified immunity is usually addressed at summary judgment). A complaint may be dismissed on qualified-immunity grounds when it is "clear on the face of the complaint that the constitutional right invoked was not clearly articulated in the case law." *Doe*, 928 F.3d at 665. A defendant raising qualified immunity in a motion to dismiss faces a

"more challenging standard of review" than would apply on summary judgment with the benefit of the factual record. *Reed*, 906 F.3d at 549 (quoting *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014)). Rather, on a motion to dismiss, the defendants' conduct as alleged in the complaint is considered for objective legal reasonableness. *Id.*

Qualified immunity applies unless the plaintiff shows that the officer violated a statutory or constitutional right that was clearly established at the time of the violation. *Id.* at 546. A plaintiff can show that a right is clearly established by pointing to an analogous case, or, alternatively, by showing that the conduct was "so egregious and unreasonable" that no reasonable officer could have thought he was acting lawfully. *Id.* at 547 (quoting *Abbott v. Sangamon Cty.*, 705 F.3d 706, 724 (7th Cir. 2013)); *Orlowski v. Milwaukee Cty.*, 872 F.3d 417, 421 (7th Cir. 2017) (a right is clearly established if "the officials were on notice that their conduct was a constitutional or statutory violation"). In other words, where a "duty imposed by law is obvious to a reasonable officer," it is clearly established. *Orlowski*, 872 F.3d at 422.

In the excessive-force context, a plaintiff must establish that there was a clearly established right to be free from the "particular use of force" employed "under the relevant circumstances." *Williams v. Ind. State Police Dep't*, 797 F.3d 468, 473 (7th Cir. 2015) (quoting *Abbott*, 705 F.3d at 725). Stating that a plaintiff has a clearly established right to be free from the use of excessive force is too general. *City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 503 (2019).

8

Dumais and Reyes are not entitled to qualified immunity on the excessive-force claim at this stage of the case. Mitchell has adequately alleged that the officers violated his Fourth Amendment right by subjecting him to excessive force. And at the time of Mitchell's seizure, an innocent person had a clearly established right to be free from the kind of alleged assault here—excessive shoving and pushing: "[P]olice officers do not have the right to shove, push, or otherwise assault innocent citizens without any provocation whatsoever." *Chelios v. Heavener*, 520 F.3d 678, 691–92 (7th Cir. 2008) (quoting *Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir. 1996)).

The officers insist that, in confusing the brothers, they made the type of honest mistake that qualified immunity is designed to protect. But that misses the point. Even if the officers reasonably thought that Jyran was Shawn, that does not mean their use of force was reasonable under the circumstances. The complaint alleges that Mitchell was not resisting, but rather was complying with the officers' demands and questions. It was clearly established that "using a significant level of force on a non-resisting or passively resisting individual constitutes excessive force." *Alicea v. Thomas*, 815 F.3d 283, 291–92 (7th Cir. 2016); *Morfin v. City of E. Chicago*, 349 F.3d 989, 1000 (7th Cir. 2003) (denying summary judgment where two officers tackled a nonresisting individual). Mitchell wasn't even passively resisting; he was attempting to answer the officers' questions about a nonviolent crime (one that he didn't commit) and was grabbed, jostled, and forced to the ground for it. It was objectively unreasonable for the officers to take down a nonresisting suspect, let alone a cooperating one. *See Holmes*, 511 F.3d at 687 (denying summary judgment where no

9

reasonable officer could have thought that "gratuitous force" was justified on an "unresisting arrestee").

Likewise, qualified immunity on the failure-to-intervene claim is not plain from the complaint. "[T]here is no doubt that an unnecessary kick, after a suspect is under control, violates the suspect's clearly established rights." *Johnson v. Rogers*, 944 F.3d 966, 970 (7th Cir. 2019). When Bates kicked Mitchell, Dumais and Reyes already had control over him. Though Bates was the one who delivered the kick, Mitchell has sufficiently pleaded that Dumais and Reyes could have prevented it. On these facts, an officer would know that it was unreasonable to facilitate a third officer kicking someone suspected of a nonviolent misdemeanor who presented no threat, was not resisting, and was already outnumbered two to one. The officers' motion to dismiss Counts V and VI is denied.

### A.     State-Law Claims

Mitchell brings three state-law claims against Dumais and Reyes: false arrest, conspiracy, and battery. The officers move to dismiss those claims based on sovereign immunity, public official immunity, and for failure to state a claim.

#### 1. Sovereign Immunity

The State Lawsuit Immunity Act prohibits plaintiffs from suing the state with certain exceptions. 745 ILCS 5/1; *see Murphy v. Smith*, 844 F.3d 653, 658 (7th Cir. 2016), *aff'd*, 138 S. Ct. 784 (2018). Mitchell brings the claims against Dumais and Reyes in their individual capacities, but the suit may still be considered a suit against the state itself if three conditions are met. First, if there are no allegations that a

10

state employee acted beyond the scope of his authority through wrongful acts; second, if the duty alleged to have been breached was not owed to the public generally independent of the fact of state employment; and third, if the complained-of actions involve matters ordinarily within that employee's normal and official functions of the state. *Murphy*, 844 F.3d at 658 (citing *Healy v. Vaupel*, 133 Ill.2d 295 (1990)).

Sovereign immunity does not apply, however, if the plaintiff alleges that state officials or employees violated "statutory or constitutional law" or acted in excess of their authority. *Id.* at 658–59; *Richman v. Sheahan*, 270 F.3d 430, 441–42 (7th Cir. 2001). While legal official acts of state officers are regarded as acts of the state itself, "illegal acts performed by the officers are not." *Murphy*, 844 F.3d at 659 (quoting *Leetaru v. Bd. of Trs. of Univ. of Ill.*, 2015 IL 117485, ¶ 46 (2015)). This exception to sovereign immunity is aimed at "situations where the state employee is not doing the business that the sovereign has empowered him or her to do," or is "doing it in a way that the law forbids." *Bianchi v. McQueen*, 2016 IL App (2d) 150646, ¶ 37.

Here, Mitchell's state-law claims are based on constitutional violations. He alleges that the officers violated his Fourth Amendment rights when they used excessive force to seize him, the same conduct that constituted a battery and a false arrest. Unconstitutional acts cannot occur in the scope of an officer's employment. Because Mitchell alleges the officers' conduct was unconstitutional, sovereign immunity does not apply. *See Wheeler v. Piazza*, 364 F.Supp.3d 870, 885–86 (N.D. Ill. 2019) ("Courts in this district have repeatedly declined to … apply sovereign

11

immunity where plaintiffs allege that individual defendants violated their constitutional rights." (collecting cases)).

### 2. Public Official Immunity

Reyes and Dumais also contend that they cannot be sued under the doctrine of public official immunity. Public official immunity is a common-law doctrine that protects state officials from "being inhibited from acting in the public's best interest because of fears of personal liability." *Mich. Ave. Nat. Bank v. Cty. of Cook*, 191 Ill.2d 493, 520–21 (2000). The doctrine is "based upon the policy that public officials should be free to exercise their judgment according to their best perception of public needs." *Hanzel Const., Inc. v. Wehde & Southwick, Inc.*, 130 Ill.App.3d 196, 200 (2d Dist. 1985).

Whether public official immunity applies depends on whether the state official's conduct was discretionary or ministerial; only discretionary conduct is immune. *Mich. Ave.*, 191 Ill.2d at 520. Discretionary acts are ones that require "personal deliberation, decision and judgment." *Bd. of Trs. of Cmty. Coll., Dist. No. 508 v. Coopers & Lybrand LLP*, 296 Ill.App.3d 538, 544 (1st Dist. 1998). Immunity attaches only when the act was "performed or omitted by the employee in determining policy and in exercising discretion." *Id.* But common-law immunity does not extend to a public employee's acts "based on corrupt or malicious motives" or to a public official's "willful and wanton acts." *Munizza v. City of Chicago*, 222 Ill.App.3d 50, 54 (1st Dist. 1991). Generally, a police officer acts willfully or wantonly under Illinois law when he acts with "actual or deliberate intention to harm" or "with an utter

12

indifference to or conscious disregard for the safety of others." *Chelios*, 520 F.3d at 693 (quoting *Breck v. Cortez*, 141 Ill.App.3d 351 (1986)).

Mitchell adequately alleges that Dumais and Reyes acted with utter indifference to his safety when they grabbed him, shoved him to the ground, and allowed him to be kicked. Further, the complaint plausibly alleges that the officers intentionally sought to harm Mitchell. Mitchell pleads that the officers were frustrated after waiting for the Jaguar, and irritated at what they perceived as Mitchell's insolence. They thus intentionally lured him out of the house and executed a forceful emergency takedown for no reason other than to exert their authority and express their anger. The complaint sufficiently alleges that the officers' conduct was at least indifferent to Mitchell's safety, if not deliberately harmful.

The officers maintain that they were conducting a routine investigation into a crime, consistent with their duties as police officers. That is not what the complaint alleges. The officers were investigating a nonviolent misdemeanor, had no legitimate reason to suspect Jyran Mitchell of anything, and, even if there were a legitimate investigatory reason to confirm his identification, they exceeded the scope of permissible police investigation when they needlessly grabbed a cooperating Mitchell, forced him to the ground, pushed him into rocks, and shoved him into a police car. Public official immunity does not apply to the facts alleged in the complaint.

13

### *3. Failure to State a Claim: False Arrest*

To state a claim for false arrest under Illinois law, Mitchell must allege that the defendants restrained or arrested him without probable cause. *Ross v. Mauro Chevrolet*, 369 Ill.App.3d 794, 798 (1st Dist. 2006). Probable cause to arrest exists when the totality of the facts known to the officer at the time of the arrest are sufficient to lead a reasonably cautious person to believe that the arrestee has committed a crime. *People v. Wear*, 229 Ill.2d 545, 563 (2008); *People v. Barnes*, 2016 IL App (2d) 150587-U, ¶ 25.

Dumais and Reyes do not contest that they arrested Mitchell. They argue that Mitchell has failed to plausibly allege that the officers lacked probable cause to arrest him. I disagree. The totality of the circumstances, as alleged, do not support an inference that Jyran Mitchell had committed a crime. The officers did not see him flee the traffic stop, he was not anywhere near the car that the driver had fled in, he repeatedly insisted that he was not Shawn Mitchell, the car's registered owner, and he cooperated fully with the officers when they asked him to identify the Malibu. The only reason to suspect Jyran Mitchell was his presence in the house where the car's owner lived. That is insufficient, especially when the car wasn't even at the house. And, Mitchell plausibly alleges that the officers would have seen a picture of Shawn Mitchell when they ran the Jaguar's plates, and knew what Shawn Mitchell looked like. While the officers insist that detention was necessary to eliminate Jyran Mitchell as a suspect, the need to rule him out as the driver did not amount to probable cause to arrest him for that crime. And unlike mistaken-identity cases

14

where a suspect cannot be identified, the complaint here alleges that Jyran Mitchell "begged" the officers to look at his driver's license to confirm his identity. [1-4] ¶ 64; *cf. Muhammad v. Pearson*, 900 F.3d 898, 909 (7th Cir. 2018) (where the suspect "had no identification with him," a reasonable officer might think that he was lying about his identity). The officers make much of the fact that the Jaguar could have been in the garage. But probable cause is assessed on the facts known to the officers at the time of the arrest. The officers did not know whether the Jaguar was or was not in the garage. Mere speculation cannot support an arrest absent any objective indicia that Mitchell had committed a crime. Mitchell has stated a claim for false arrest.[4]

### 4. Failure to State a Claim: Battery

To state a claim for battery, a plaintiff must allege that the defendant subjected him to an unauthorized touching that offends a reasonable sense of personal dignity. *Chelios*, 520 F.3d at 692; *see also Country Mut. Ins. Co. v. Dahms*, 2016 IL App (1st) 141392, ¶ 83. Mitchell plausibly alleges that Dumais and Reyes each grabbed him by an arm, shoved him to the ground, pushed him into rocks, and forced him into the back of a police car. He adequately alleges that the officers subjected him to an unauthorized, offensive touching.

Defendants appear to rely on the state Tort Immunity Act as to the battery claim. That Act states that local public employees are not liable for actions done in

---

[4] The false-arrest standard is the same under the Fourth Amendment and § 1983. *See Neita v. City of Chicago*, 830 F.3d 494, 497 (7th Cir. 2016) ("To prevail on a false-arrest claim under § 1983, a plaintiff must show that there was no probable cause for his arrest."). The right to be free from an arrest unsupported by probable cause is clearly established. *Burritt v. Ditlefsen*, 807 F.3d 239, 250 (7th Cir. 2015). If Mitchell's false-arrest claim is meant to be under federal law as well, the complaint states a claim.

15

the execution of law enforcement unless those actions constitute willful and wanton conduct. 745 ILCS 10/2-202. But the Tort Immunity Act does not apply to state police. *Moore v. Green*, 219 Ill.2d 470, 487 (2006); *see* 745 ILCS 10/1-206 ("local public agency" does not include officers of the state). So Mitchell does not need to plead that the conduct was willful and wanton to state a battery claim. In any event, for the reasons discussed above with regard to common-law public official immunity, Mitchell has plausibly pleaded that Dumais and Reyes either intended to harm him or acted with conscious disregard for his safety. Mitchell has stated a battery claim.

### 5. *Failure to State a Claim: Conspiracy*

To state a claim for civil conspiracy, the plaintiff must allege facts establishing: (1) the existence of an agreement between two or more people (2) to participate in an unlawful act or a lawful act in an unlawful manner, (3) that one of the parties performed an overt act in furtherance of the common scheme, and (4) the overt act caused an injury. *Lewis v. Lead Indus. Ass'n*, 2020 IL 124107, ¶¶ 18–21. Conspiracy is not a separate tort in Illinois. *Mauvais-Jarvis v. Wong,* 2013 IL App (1st) 120070, ¶ 109; *see also Pluciennik v. Vandenberg*, 2018 IL App (3d) 160726, ¶ 22. Rather, it is a means of establishing vicarious liability among the coconspirators for an underlying tortious act, even if that act was performed by only one person. *Merrilees v. Merrilees,* 2013 IL App (1st) 121897, ¶ 49. To state a claim for conspiracy, a plaintiff must identify the underlying tortious act. *Pluciennik*, 2018 IL App (3d) 160726, ¶ 22; *Farwell v. Senior Servs. Assocs.*, 2012 IL App (2d) 110669, ¶ 22.

Mitchell has failed to state a claim for conspiracy because he does not allege an underlying tortious act or an injury. Mitchell's complaint alleges that the officers conspired to conceal their use of excessive force. As a result, Bates "filed a false report" and the officers gave "false and misleading information to investigators." [1-4] ¶¶ 106–07. But Mitchell does not allege that the excessive force itself was the object of a conspiracy, and he fails to point to factual allegations or argue as a matter of law that falsifying a police report is a tort under Illinois law. Without an underlying tort, Mitchell's claim fails. *See McCombs v. Crivolio*, 2019 IL App (1st) 181252-U, ¶¶ 42–43 (dismissing conspiracy claim because "plaintiff has identified no tortious or other legally cognizable wrongdoing," so "there can be no cause of action against defendant for a conspiracy in supposed furtherance of such actions"); *Coghlan v. Beck*, 2013 IL App (1st) 120891, ¶ 59 ("[T]he conspiracy claim fails if the independent cause of action underlying the conspiracy allegation fails."). Further, Mitchell does not allege that he was injured by the officers submitting a misleading police report. The injury occurred during the takedown, and the officers released Mitchell after they ran the plates on the Malibu. The complaint does not explain how Mitchell could have been harmed by paperwork that the officers submitted well after the seizure had ended. Count III is dismissed without prejudice.

**IV.    Conclusion**

Dumais and Reyes's motion to dismiss, [18], is denied in part. Count III is dismissed without prejudice. The motion is otherwise denied. The state defendants shall file an answer to the complaint by June 19, 2020. The parties shall continue

their efforts to complete fact discovery by July 15, 2020, and shall file an updated status report on July 2, 2020, to describe the progress and whether any party seeks an extension of time of any deadlines.

ENTER:

                                              Manish S. Shah
                                              United States District Judge

Date:  June 5, 2020